UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONALD McQUEEN,

                                          Plaintiff,
                        v.

LEE HUDDLESTON, *doing business as*
  Huddleston and Huddleston Attorneys at Law,
FRENCH & FRENCH LTD., *doing business as*
  Huddleston and Huddleston Attorneys at Law, and
RUSSELL D FRENCH, *doing business as*
  Huddleston and Huddleston Attorneys at Law,

                                      Defendants.
_____

                                REPORT
                                and
                           RECOMMENDATION

                        13-CV-00302V(F)

APPEARANCES:        LAW OFFICES OF KENNETH HILLER, PPLC
                              Attorneys for Plaintiff
                              TIMOTHY HILLER and
                              SETH ANDREWS, of Counsel
                              6000 N. Bailey Avenue
                              Suite 1A
                              Amherst, New York  14226

                              HUDDLESTON & HUDDLESTON
                              Attorneys for Defendant Lee Huddleston
                              LEE HUDDLESTON, of Counsel
                              1032 College Street
                              Post Office Box 2130
                              Bowling Green, Kentucky  42102-2130

## JURISDICTION

       This case was referred to the undersigned on December 28, 2015, by Honorable

John T. Curtin,[1] for all pretrial matters including preparation of a Report and

Recommendation on dispositive motions.  The matter is presently before the court on

---

[1] By Text Order entered April 12, 2016 (Dkt. 63), this matter was reassigned to Honorable Lawrence J. Vilardo.

Defendant Lee Huddleston's motion for summary judgment (Dkt. 72), filed December 1, 2016.

## BACKGROUND

On March 25, 2013, Plaintiff Donald McQueen ("Plaintiff"), commenced the instant action against Huddleston and Huddleston, for allegedly violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA" or "the Act"), by attempting to collect from Plaintiff a debt Plaintiff had already satisfied in 2006. With leave of the court, Plaintiff filed on November 11, 2013, an amended complaint (Dkt. 12), naming as defendant Lee Huddleston doing business as Huddleston and Huddleston, Attorneys at Law ("Huddleston and Huddleston"). On June 26, 2015, Plaintiff, with further leave of the court, filed a further amended complaint (Dkt. 48) ("Second Amended Complaint"), naming as defendants Lee Huddleston doing business as Huddleston and Huddleston Attorneys at Law ("Huddleston"), Russell French doing business as Huddleston and Huddleston Attorneys at Law ("French"), and French & French Ltd. doing business as Huddleston and Huddleston Attorneys at Law ("French & French") (together, "Defendants"). To date, Plaintiff has managed to serve the Second Amended Complaint only on Huddleston ("Defendant"). On March 4, 2016, Defendant filed his answer to the Second Amended Complaint (Dkt. 62).

On December 1, 2016, Defendant filed the instant Motion for Summary Judgment (Dkt. 72) ("Defendant's Motion"). In opposition to Defendant's Motion, Plaintiff filed on February 6, 2016, the Affirmation of Seth J. Andrews, Esq. (Dkt. 74) ("Andrews Affirmation"), attaching exhibit A (Dkt. 74-1) ("Andrews Affirmation Exh. A"), and the

Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Dkt. 74-2) ("Plaintiff's Memorandum").  On March 22, 2017, Defendant filed in further support of summary judgment a Statement of Facts (Dkt. 77) ("Defendant's Statement of Facts"), attaching a Memorandum of Law (Dkt. 77-1) ("Defendant's Memorandum"), a Reply (Dkt. 77-2) ("Defendant's Reply"), the Revised Affidavit of Nicole Duffy (Dkt. 77-3) ("Duffy Affidavit"), the Affidavit of Russell Brown (Dkt. 77-4) ("Brown Affidavit"), and the Affidavit of Lee Huddleston Re Pictures of His Office and Telephone Numbers and a Recording of His Voice (Dkt. 77-5) ("Huddleston Affidavit").  Manually filed by Plaintiff on March 22, 2017, is an audio compact disc ("the CD").  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion seeking summary judgment should be DENIED.

## FACTS[2]

At some unspecified time, Plaintiff Donald McQueen ("Plaintiff"), incurred a debt ("the subject debt") to CitiFinancial ("CitiFinancial"), which was, at some later unspecified time, acquired by CSGA, LLC ("CSGA"), who obtained a judgment ("the judgment") in the amount of $ 10,036.46 for the subject debt against Plaintiff in February 2006.  Dkt. 74-1 at 96.  Plaintiff then made arrangements with CSGA for payment of the subject debt with the judgment being fully satisfied by Plaintiff in March 2006.

Defendant Russell French ("French"), is the president of French & French, Ltd. At some unspecified time, Huddleston and Huddleston, Attorneys at Law, PLLC, formed

---

[2] Taken from the pleadings and motion papers filed in this action.

3

Netquest Recovery Services, Inc. ("NetQuest"), Huddleston Dep. Tr.[3] at 12, a debt collection agency run by French ("French").  As an attorney with Huddleston and Huddleston, Defendant Lee Huddleston ("Defendant" or "Huddleston"), reviewed for compliance with the FDCPA a form letter ("the letter"),[4] NetQuest intended to send to debtors.

One copy of the letter, which was dated April 21, 2009, signed by Defendant, and on letterhead indicating the letter was issued through Huddleston and Huddleston's "collection division," was sent to Plaintiff advising Huddleston and Huddleston had been hired to collect the subject debt Plaintiff owed to CitiFinancial, for which the balance then due was $ 5,628.10 plus interest from the date of entry of a judgment on the subject debt which had been obtained in court, and that the letter was an attempt to collect the subject debt.  The letter continued that any further legal action necessary to collect the subject debt could include, *inter alia*, filing liens against Plaintiff's property and garnishing Plaintiff's income, and the costs of such actions would be added to the subject debt.  Plaintiff was instructed that "to avoid the hassel [*sic*] and expense of the additional legal actions, you need to contact us immediately at (270) 904-0195."  Around the same time Plaintiff received the letter from Huddleston and Huddleston, another law firm, Bronson & Migliaccio, LLP ("Bronson & Migliaccio"), began contacting Plaintiff regarding payment of the subject debt.

On February 9, 2012, Plaintiff filed with New York State Attorney General's Office a complaint ("consumer complaint"), against Bronson & Migliaccio and CSGA, regarding

---

[3] References to "Huddleston Dep. Tr." are to the page of the transcript of Huddleston's deposition, filed as Dkt. 74-1.
[4] A copy of the letter is filed as Dkt. 74-1 at 88.

a February 20, 2006 transaction in the amount of $ 10,036.46, for which there was an open judgment. Dkt. 74-1 at 96. Accord to Plaintiff, the judgment was obtained by Bronson & Migliaccio which withdrew from Plaintiff's checking account $ 857.26 for services regarding CitiFinancial. *Id.* at 97. Plaintiff explained that in a telephone conversation with Bronson & Miggliacio, Plaintiff advised a judgment on the subject debt had already been rendered against Plaintiff, that Plaintiff's wages were being garnished, and that on March 29, 2011, the judgment on the subject debt had been satisfied in full. *Id.* Plaintiff requested the judgment be lifted as satisfied and that Bronson & Miggliacio return the $ 857.26. *Id.*

On a form response to the consumer complaint, prepared by French as Huddleston and Huddleston's "manager" and dated March 22, 2012, the "legal name" of the "company" is listed as "Huddleston and Huddleston" which is described as a "sole proprietorship" owned by "Lee Huddleston." Dkt. 74-1 at 98. In the space provided for the name, address and telephone number of a person to contact for additional information, French wrote only "270-784-2505." *Id.* In the written response, French explains that "[w]e did not take judgement [*sic*], or receive any payment. When we learned it had been paid, we closed the account." We can not release judgment." *Id.* Following this statement is a signature reading "Lee Huddleston." *Id.*

On March 27, 2012, Plaintiff received a voicemail on his telephone answering machine from someone claiming to be from the law office of Huddleston and Huddleston, and stating, "We are in the process of executing on a judgment taken against you." Second Amended Complaint ¶ 26.A. The caller further informed that an investigator had been assigned to the case to verify Plaintiff's employment, locate

5

assets, and review Plaintiff's credit report in an effort to satisfy the judgment. *Id.* ¶ 26.B. The call concluded with an instruction to Plaintiff that "[t]o obtain information regarding this lawsuit, call 866-360-8674," *id.* ¶ 26.C, and an admonition that "[t]his is an attempt to collect a debt, . . . [and] [t]his is a communication from a debt collection attorney." Huddleston Dep. Tr. at 73.

On March 28, 2012, Plaintiff called the (866) 360-8674 telephone number to inquire why Huddleston and Huddleston was contacting him, and was told by the unidentified speaker who answered the call that Plaintiff owed $ 5,703.10 and demanded Plaintiff make arrangements to pay that amount. Second Amended Complaint ¶¶ 29-30. This action followed.

At some unidentified time after this instant action was commenced, Plaintiff's counsel, Seth Andrews, Esq. ("Andrews"), acting on Plaintiff's behalf, placed a telephone call to (866) 360-8674, reaching an answering machine instructing, "At the tone, please leave a message for Huddleston Law Firm." Huddleston Dep. Tr. at 58-61. On December 9, 2014, one "Wayne" returned the call to Andrews, leaving a message ("the phone message") stating

> My name is Wayne from French & French. Anyway, there's been a couple of messages from Seth Andrews calling asking for Lee Huddleston. Lee Huddleston is not in our office, sir. I can get his phone number for you. His phone number is area code (270) 781-9670. And, again, that's for Lee Huddleston from Huddleston Law Firm. If you need to reach him, sir, that's the number to reach him. He's not in our office. Thank you.

Huddleston Dep. Tr. at 57.[5]

---

[5] Defendants do not argue that by placing the telephone call, Andrews has become a fact witness in this action subject to potential disqualification pursuant to N.Y. Rules of Prof. Conduct Rule 3.7(a), N.Y. Judiciary Law Appendix (McKinney 2017) ("A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact . . . .").

## **DISCUSSION**

In moving for summary judgment, Defendant Huddleston reasserts, Defendant's Motion at 1, arguments made in support of an earlier summary judgment motion (Dkt. 18), specifically, that Plaintiff has sued the wrong party insofar as neither Huddleston & Huddleston, Attorneys at Law PLLC (sued in the original Complaint), nor Huddleston & Huddleston Attorneys at Law (sued in the First Amended Complaint), is a legally recognized existing entity, leaving only Lee Huddleston, individually, as a viable defendant, that the facts establish Huddleston did not personally commit any of the alleged FDCPA violations, and Huddleston does not earn a substantial portion of his income from debt collection activity as required for liability under the FDCPA. Defendant further argues that discovery in this action has shown Huddleston's only involvement in debt collection was to vet for his client, NetQuest, a form letter NetQuest proposed to send to debtors to ensure the letter complied with FDCPA, Defendant's Motion at 1, the letter was drafted and mailed to Plaintiff more than one year prior to the commencement of the instant action, *id.* at 2, and that Plaintiff's only evidence that collection of the subject debt was pursued after Plaintiff filed the consumer compliant is a recording of the telephone voicemail Plaintiff maintains is from Huddleston, but there is nothing abusive in the voicemail, the voice in the voicemail is not Huddleston's, and there is no proof the voicemail message was left for Plaintiff after Plaintiff filed the consumer complaint. *Id.* at 2-3. In opposition to summary judgment, Plaintiff maintains Defendant's Motion is unaccompanied by two documents required under the Local Rules of Civil Procedure – Western District of New York ("Local Rules"), including a

memorandum of law as required by Local Rule 7(a)(3), Plaintiff's Memorandum at 1, and a statement of facts for which Defendant maintains there is no dispute as required by Local Rule 56(a)(1), *id.*, nor does Defendant reference any statute or theory of law in support of summary judgment.  *Id.*  Plaintiff alternatively argues there are issues fact regarding Huddleston's participation in debt collection including the subject debt, and Huddleston's business relationship with NetQuest, that preclude summary judgment. *Id.* at 2-7.  In further support of summary judgment, Defendant filed Defendant's Statement of Facts, a memorandum of law asserting that the record is devoid of any evidence that Defendant had the requisite *mens rea* for liability under the FDCPA and asserts Kentucky law provides that the members of a Professional Limited Liability Corporation cannot be held individually liable to non-clients, Defendant's Memorandum at 2, and a reply asserting Plaintiff has failed to provide any proof of direct liability, Defendant's Reply at 1-2, or vicarious liability.  *Id.* at 2-6.

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be

drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). "A fact is material if it 'might affect the outcome of the suit under governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)). Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce*

*Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

### 2.     Failure to Comply with Local Rules of Civil Procedure

Preliminarily, the court considers Plaintiff's argument that Defendant's failure to comply with Local Rule 7(a)(3), requiring a summary judgment motion be supported by a memorandum of law, and with Local Rule 56(a)(1), requiring a summary judgment movant file a statement of undisputed facts.  Both Local Rules provide that failure to comply may constitute grounds for denying summary judgment.

In his reply papers filed in further support of summary judgment, Defendant did include a Statement of Facts, Dkt. 77, and a Memorandum of Law, Dkt. 77-1.  Although the court does not condone Defendant's belated compliance with the Local Rules, "[a] local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."  Fed.R.Civ.P. 83(a)(2); *Buck v. Cleary*, 345 Fed.Appx. 660, 662 (2d Cir. Sept. 14, 2009) (finding district court abused discretion in deeming admitted defendants' statement of material facts based on plaintiff's failure to separately respond to each stated fact as required under applicable local rule, vacating lower court's decision to do so in the absence of any evidence that the failure to comply was willful, and remanding that portion of the judgment based on such deemed admitted facts).  Similarly, nothing in the instant record establishes, or even suggests, Defendant's failure to timely formally comply with Local Rules 7(a)(3) and 56(a)(1) was willful.  Accordingly, the court, in the exercise of its discretion, should not deny Defendant's summary judgment motion based on Defendant's belated compliance with Local Rules 7(a)(3) and 56(a)(1).

### 3.     **Merits of Motion**

The essence of Defendant's argument in support of summary judgment is that there is no evidence establishing Defendant has regularly acted as a debt collector, as defined under the FDCPA, let alone in connection with the subject debt.  The term "debt collector" is defined under the FDCPA as

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

Whether an attorney or law firm "regularly" engages in debt collection activity within the meaning of 15 U.S.C. § 1692a(6) "must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity."  *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62 (2d Cir. 2004).  Factors that are "illustrative" but not exhaustive include

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*Id.* at 62-63.

Further, when deciding whether a law firm "regularly engages" in debt collection activity so as to qualify under the FDCPA as a debt collector, facts relating to the role that debt collection work plays in the practice as a whole, and whether the firm markets itself as a debt collector should also be considered.  *Id*. at 63.  Here, the record contains evidence

11

which, if accepted by the trier of fact, could establish Defendant was a debt collector as defined under the FDCPA.

In particular, although Defendant maintains Huddleston's only involvement in debt collection was to vet for his client, NetQuest, a form letter NetQuest proposed to send to debtors to ensure the letter complied with FDCPA, Defendant's Motion at 1, Defendant's assertion that he "had almost no contact with NetQuest," Defendant's Reply at 3, begs the question as to if true, why did Defendant receive payment from NetQuest for at least three years, including 2012, 2013, and 2014.  Specifically, in her affidavit filed August 19, 2014 (Dkt. 17, refiled as Dkt. 74-1 at 124), one Nicole Duffy ("Duffy") ("First Duffy Affidavit"), states that she is "the accountant [for NetQuest] who is involved in distributing any gross funds made by Mr. Lee Huddleston for debt collections."  Duffy further maintain that she is "also familiar with Mr. Huddleston's other finances from the practice of law," *id*., and that the moneys Duffy had disbursed to Huddleston "are clearly not a substantial part of Mr. Huddleston's income.  In fact, after deductions for expenses, he has broken even if not lost money on collections."  *Id.*

Defendant's reliance on the Revised Affidavit of Nicole Duffy (Dkt. 77-3) ("Second Duffy Affidavit"), only serves to further muddy the issue requiring trial.  In particular, despite referring at his deposition to Duffy as his accountant, Huddleston Dep. Tr. at 66; Affidavit of Lee Huddleston (Dkt. 17; refiled as Dkt. 74-1 at 128), in the Second Duffy Affidavit, Duffy describes herself as being "the accountant and Treasurer of NetQuest Recovery Services, Inc.," thus raising a question as to whether the affairs of Huddleston's law business truly are separate from NetQuest's debt collection business as Defendant maintains.  Furthermore, Duffy's asserted clarification, *id*., that

12

the monetary amounts remitted to Huddleston in 2012 ($ 1,777.17), 2013 ($ 4,322.56), and up till August 18, 2014, the date of the Original Duffy Affidavit ($ 561.71), were not for actual debt collection practices but, rather, for legal services rendered by Huddleston to NetQuest, the record is completely devoid of any explanation as to what types of legal services Huddleston purportedly provided NetQuest, a fact made more significant by Defendant's insistence, Defendant's Reply at 3, that since "vetting" the letter for NetQuest, Defendant has "had almost no contact with NetQuest."

Insofar as Defendant maintains that Plaintiff's only evidence that collection of the subject debt was pursued after Plaintiff filed the consumer compliant is a recording of the telephone voicemail Plaintiff maintains is from Huddleston, but there is nothing abusive in the voicemail, the voice in the voicemail is not Huddleston's, and there is no proof the voicemail message was left for Plaintiff after Plaintiff filed the consumer complaint, Defendant's Reply at 2-3, it is very difficult to prove a negative at trial and much more so on summary judgment.  Specifically, just as there is no proof the voicemail message was left for Plaintiff after Plaintiff filed the consumer complaint, there is also no proof from either party that the message was left before.  As such, when the message was left remains an issue for the trier of fact and cannot be resolved on summary judgment.  Further, even assuming, *arguendo*, the voicemail message was not left by Defendant, such fact does not establish it was not left at Defendant's direction, nor would such fact establish Defendant was not involved with the debt collection practice when the voicemail message was left.

The record, however, contains evidence that at on December 3 and 8, 2014, date, Plaintiff's counsel, Andrews, placed telephone calls to the (866) 360-8674

number,[6] which Wayne returned to Andrews, advising that "Lee Huddleston" was not in that office, but providing a telephone number "Lee Huddleston from Huddleston Law Firm," Huddleston Dep. Tr. at 57, which number Defendant admits is his law firm's telephone number.  Huddleston Dep. Tr. at 59; *see also* Dkt. 77-5 at 1 and 7 (Defendant explaining in an affidavit that the attached photograph shows his office telephone displaying as his office telephone number (270) 781-9670, and relying on such evidence in support of summary judgment to establish the (866) 360-8674 telephone number is not a telephone number used in connection with Defendant's law practice).  Huddleston, upon further deposition questioning, was unable to explain how the unidentified speaker in the recorded message was able to provide Defendant's correct telephone number.  Huddleston Dep. Tr. at 59

Huddleston's predicament is unfortunate.  While it may be, as Huddleston maintains, that Huddleston merely vetted the form letter that NetQuest later sent to debtors, including Plaintiff, the letter Plaintiff received is printed on letterhead for Huddleston & Huddleston, thereby giving the impression, one a reasonable juror could find as a fact, that Huddleston's law firm was seeking to collect the subject debt.  There is also, as discussed, Discussion, *supra*, at 11-12, evidence that Huddleston's law firm was receiving compensation for debt collection activities beyond the mere vetting of the form letter.  In contrast, the only evidence Huddleston has produced supporting his contention is Huddleston's own assertions such that Huddleston, in moving for summary judgment based, essentially is asking the court to accept his assertions at face value.

---

[6] *See* Dkt. 27 ¶¶ 5 and 6 (Andrews stating he placed the telephone calls to the (866) 360-8674 telephone number so as to inquire about having, pursuant to Fed.R.Civ.P. 26(f), a conference with Huddleston regarding the commencement of discovery.

To do so, however, would be to make a factual finding which the court, by law, is expressly prohibited from doing on summary judgment. *See Collazo*, 656 F.3d at 134 ("Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" (quoting *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed.R.Civ.P. 56(a)))).

Insofar as Defendant maintains, Defendant's Memorandum at 2, that as a member of a professional limited liability company ("PLLC"), organized under the laws of Kentucky, Defendant is liable to the PLLC's clients for professional malpractice, but may not be held individually liable to third parties such as Plaintiff, the relevant Kentucky statute provides, in pertinent part, that a member or employee of a PLLC, although not liable for any debt, obligation or liability of the PLLC attributed to any negligence, wrongful act or actionable misconduct of any other member or employee of the PLLC, but a PLLC member or employee may be liable for his own negligence, wrongful acts or misconduct. Ky. Rev. Stat. Ann. § 275.150 (1) and (3).[7] Further, although Defendant maintains he is the sole employee of the law firm, submitting in support photographs purported to be of his office to establish no one else works there, Dkt. 77-5 at 1, 3-6, and the Affidavit of Russell Brown ("Brown") (Dkt. 77-4) ("Brown Affidavit"), managing member of Downtown Property Management LLC, the owner of the building in which Defendant's law firm is located, and who avers that based on the location of his own business office across the foyer in the same building as Defendant's law firm, Brown would know if Defendant had any employees, the relevant Kentucky statute is not "set

---

[7] References to Ky. Rev. Stat. Ann. are to "West 2012."

15

aside" by the fact "[t]hat a limited liability company has a single member or a single manager . . . ." Ky. Rev. Stat. Ann. § 275.150(1). Accordingly, the business form of Defendant's law firm will not shield Defendant from liability for the alleged violations of the FDCPA. Moreover, 15 U.S.C. § 1692n specifically provides that the FDCPA supersedes any inconsistent state law.

Finally, because Plaintiff has not had an opportunity to respond to Defendant's argument regarding individual liability and vicarious liability, raised for the first time in replying in further support of summary judgment, Defendant's Reply at 2-5, albeit without citation to any supporting law, such argument may be disregarded by the court. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (district court has discretion to consider argument made for the first time in reply memorandum of law (citing *Bayway Refining Co. v. Oxygenated Marketing & Trading A.G.*, 215 F.3d 219, 226 (2d Cir. 2000) (reviewing for abuse of discretion district court's decision to rely on evidence submitted with moving party's reply papers)).

Accordingly, Huddleston's motion for summary judgment should be DENIED.

### **CONCLUSION**

Based on the foregoing, Defendant's motion (Dkt. 72), should be DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    October 16th, 2017
          Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and to the attorneys for the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   October 16th, 2017
         Buffalo, New York