UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONALD McQUEEN,

      Plaintiff,

    v.

LEE HUDDLESTON, d/b/a
Huddleston and Huddleston Attorneys at Law,
FRENCH & FRENCH LTD., d/b/a
Huddleston and Huddleston Attorneys at Law,
RUSSELL D FRENCH, d/b/a
Huddleston and Huddleston Attorneys at Law,

      Defendants.

13-CV-302
DECISION AND ORDER

      On March 25, 2013, the plaintiff, Donald McQueen, commenced this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Docket Item 1. On December 28, 2015, the Court (Honorable John T. Curtin) referred this case to United States Magistrate Judge Leslie G. Foschio for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Docket Item 53. On April 12, 2016, this case was reassigned from Judge Curtin to the undersigned. Docket Item 63.

      On December 1, 2016, Lee Huddleston, a defendant, moved for summary judgment. Docket Item 72. On February 6, 2017, McQueen responded, Docket Item 74, and on March 22, 2017, Huddleston replied to McQueen's response and filed the statement of facts required by Local Rule 7(a)(3), Docket Items 77, 77-1, 77-2. On October 16, 2017, Judge Foschio issued a Report and Recommendation ("R&R") finding that Huddleston's motion for summary judgment should be denied. Docket Item 78.

On November 20, 2017, Huddleston filed five objections to the R&R. Docket Item 82. Though the objections are convoluted, each attempts to resolve genuine disputes of material fact raised in the R&R. Specifically Huddleston objects to the following conclusions he claims that Judge Foschio reached in the R&R:

1. Huddleston's collection of McQueen's debt remains a material issue of fact;

2. In response to the inquiry by McQueen's counsel, Seth Andrews, into the collection action against McQueen, someone provided Andrews with Huddleston's phone number, creating an issue of fact as to whether Huddleston was the debt collector;

3. NetQuest tried to collect a debt from McQueen that had already been paid;

4. Huddleston collected debts for NetQuest and attempted to collect the debt from McQueen; and

5. Summary judgment was not warranted even though Huddleston did not call McQueen and there was no evidence of when McQueen was contacted.

Docket Item 82.[1]

To support his objections, Huddleston offers an affidavit from his former co-defendant, Russel D. French. Huddleston claims that French's affidavit clarifies and resolves any remaining issues of material fact and, on this basis, asks the Court to grant summary judgment. McQueen disagrees and argues that a new affidavit submitted

---

[1] By implying that Judge Foschio made findings of fact, Huddleston mischaracterizes the R&R. Judge Foschio explicitly stated throughout the R&R that he was not making findings of fact but rather was identifying genuine issues of material fact that must be resolved by the factfinder. *See, e.g.*, Docket Item 78 at 15 ("Huddleston, in moving for summary judgment [ ], essentially is asking the court to accept his assertions at face value. To do so, however, would be to make a factual finding which the court, by law, is expressly prohibited from doing on summary judgment").

after the summary judgment motion was made raises new arguments that should be disregarded by this Court. Docket Item 84.

## DISCUSSION

I.  LEGAL STANDARDS

   A.  **Review of the Report and Recommendation**

When a magistrate judge issues a report and recommendation on a dispositive motion, the court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).

   B.  **Motion for Summary Judgment**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996).

The Court assumes the parties' familiarity with the facts outlined in the R&R, Docket Item 78 at 3, as well as the facts alleged in French's affidavit, Docket Item 82 at 10.

## II. ANALYSIS

The crux of Huddleston's argument is that he was not involved with NetQuest's debt collection practices. But in his R&R, Judge Foschio highlighted several contradictions in the record that raise questions about Huddleston's involvement, including:

1. Huddleston asserted that he "had almost no contact with NetQuest," but he received payments from NetQuest for at least three years;

2. In his deposition, Huddleston referred to Nicole Duffy as his personal accountant, but in her deposition, she described herself as "the accountant and Treasurer of NetQuest Recovery Services, Inc.";

3. Huddleston asserted that he rendered only legal services to NetQuest and was not collecting debts for them, but "the record is devoid of any explanation as to what types of legal services Huddleston purportedly provided NetQuest";

4. Only Huddleston's own self-serving assertions contradicted the evidence that his law firm was compensated in connection with NetQuest's debt collection activities;

5. Someone claiming to be from Huddleston and Huddleston informed McQueen by voicemail that the law firm was executing a judgment against McQueen. When McQueen's counsel called the number left in the message, the person with whom he spoke gave him Huddleston's telephone number. In his deposition, Huddleston could not explain why his telephone number was given to McQueen's counsel.

Docket Item 78 at 12-14. In light of these discrepancies, Judge Foschio found genuine issues of material fact and recommended that this Court deny summary judgment. *Id.* at 16.

In his objections, Huddleston argues that there are no factual issues because he was not involved in any way with the attempt to collect McQueen's debt. But Huddleston does not rely on the record—perhaps sensing that it was incomplete after reading the R&R—or on the law. Instead, Huddleston relies on a newly submitted affidavit from his former co-defendant, Russel D. French, in an attempt to resolve any remaining material disputes. For several reasons, that affidavit does not eliminate the issues of fact outlined by Judge Foschio.

To survive a motion for summary judgment, non-moving parties cannot manufacture a factual dispute simply by submitting a contradictory affidavit. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). By the same token, parties seeking summary judgment may not simply rely on a contradictory affidavit to negate a genuine factual dispute. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001). Indeed, if the facts alleged in such affidavits are "so contradictory that doubt is cast upon their plausibility," the court should disregard them to prevent "the mendacious [from] seek[ing] windfalls in the litigation lottery." *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (quotations and citations omitted). French's affidavit fails for that reason alone.

The timing of an affidavit also can subject it to greater scrutiny. After its adversary has briefed a summary judgment motion, a party is better able to craft an affidavit that addresses any highlighted evidentiary gaps. *See In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 195 (2d Cir. 2013) ("[W] are also aware of the greater facility with which a party can craft an affidavit, or shape deposition testimony, when evidentiary gaps have been identified in an adversary's summary judgment

5

arguments."). Therefore, someone who submits an affidavit in reply, in sur-reply, or in response to a report and recommendation more likely does so simply to defeat or win summary judgment than to clarify or complete the record. *See id.* Moreover, a district judge cannot consider new arguments raised in objections to a report and recommendation that could have been raised before the magistrate judge. *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 312-13 (W.D.N.Y. 2009).

French's affidavit fails for that reason as well. When he submitted the affidavit, Huddleston not only had the advantage of the evidentiary gaps identified in his adversary's summary judgement papers, he also had the greater advantage of the evidentiary gaps identified in Judge Foschio's R&R. *See* Docket Item 78. Indeed, in his objections, Huddleston explicitly attempts to address the very evidentiary gaps that Judge Foschio highlighted. But in doing so he introduces new facts through French's affidavit. Because those new facts raise new arguments, and because they are too contradictory—and conclusory—to be plausible, Huddleston's submission is deficient both procedurally and substantively.

As the moving party, Huddleston should have anticipated and addressed any factual disputes during discovery. Here, the central dispute is clear: was Huddleston collecting McQueen's debt? Discovery did not provide a conclusive answer to that question and Huddleston's self-serving attempt to come up with an answer now cannot and does not change that.

For example, Huddleston argues that he has been sued incorrectly, Docket Items 72, 77, and that NetQuest, French, and French's law firm should be the defendants. Docket Item 77-2. Because Huddleston made this argument when he moved for

summary judgment, he knew then that French's testimony would be important. But instead of taking French's testimony during discovery—or submitting French's affidavit in support of his summary judgment motion—Huddleston submits it now as part of his objections to Judge Foschio's R&R. Using an affidavit to resolve factual disputes under such circumstances is fundamentally unfair. [2] *See Fosamax*, 707 F.3d. at 195.

Even more concerning, French's affidavit springs new facts on McQueen after the close of discovery. Surprise attacks like these are what the Federal Rules of Civil Procedure are designed to avoid. *See Burns v. Gadsden State Cmty. Coll.*, 908 F.2d 1512, 1517 (11th Cir. 1990) ("Rule 6(d) of the Federal Rules of Civil Procedure, read in conjunction with Rule 56(c), further supports the principle that the rules of procedure are intended to provide the nonmovant with a reasonable and meaningful opportunity to respond to the legal theories and facts as asserted by the party moving for summary judgment."). For that reason among others, new arguments like these cannot be raised in objections or considered by the district judge precisely because they were not raised before the magistrate judge. *See Hubbard*, 752 F. Supp. 2d at 312-13.

Finally, even if this Court could and did consider French's affidavit, the facts alleged in it would not save the day for Huddleston because they only raise more questions about Huddleston's involvement in the collection of McQueen's debt. For example, Huddleston claims that he had minimal contact with NetQuest, but French undermines that claim when he declares broadly that Huddleston was hired by NetQuest "for legal services ranging from filing corporate papers, to law suits against

---

[2] Indeed, in his response to Huddleston's objections, McQueen noted that "French could not be located for his deposition but that [Huddleston] can always find him when he needs to churn out some additional 'facts.'" Docket Item 84 at 2.

7

the Corporation, and to personal representation." Docket Item 82 at 11.  French asserts that he owned and managed the phone number that McQueen's counsel called after McQueen received the voicemail message about the debt collection, *id.* at 12, but he does not explain why McQueen's counsel was given Huddleston's phone number when counsel called French's number.  Even more perplexing is French's response to a complaint from the New York Attorney General regarding debt collection practices: in his affidavit, French admits that he "signed the response form [to the Attorney General's complaint] as 'Manager' for Huddleston & Huddleston even though [he] was not even an employee, much less a manger," and that he signed Huddleston's name but did not tell him.  *Id.* at 14.  Although French is confident that he "satisfied the Attorney General's office as [he] never heard anything further on the matter," his affidavit does nothing to resolve questions about the relationships between and among French, NetQuest, Huddleston, and Huddleston's law firm.

Regardless of whether McQueen "did sue the wrong party" as French asserts, Huddleston has not resolved a record riddled with genuine disputes of material fact.  Instead, Huddleston has further muddied the waters.  And as to the questions surrounding Huddleston's connection with NetQuest, French & French, and McQueen's debt, French's affidavit only raises more.

## **CONCLUSION**

Huddleston's objections are procedurally and substantively deficient.  After reviewing the record de novo, this Court finds that genuine disputes of material fact preclude summary judgment.  This Court therefore accepts the R&R, Docket Item 78, and DENIES the defendant's motion for summary judgment, Docket Item 72.  The case

is referred back to Judge Foschio for further proceedings consistent with Judge Curtin's order of referral in December 2015, Docket Item 53.

SO ORDERED.

Dated: February 1, 2018
Buffalo, New York

    *s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE